UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICIA PAUL,

                Plaintiff,

                                 Case No. 14-CV-12484

vs.

                                 HON. GEORGE CARAM STEEH

CSK AUTO, INC., et al.,

                Defendants.

_____/

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [DOC. 16]

This disability discrimination case arises out of plaintiff Patricia Paul's claim that her employer, defendant O'Reilly Auto, Inc. n/k/a O'Reilly Auto Enterprises LLC ("O'Reilly"), improperly terminated her because of a disability, constituting a violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. Now before the court is O'Reilly's motion for summary judgment.[1] Oral argument was heard on July 22, 2015. For the reasons set forth below, O'Reilly's motion for summary judgment is granted.

**I. Factual Background**

Patricia Paul ("Paul"), began her employment with O'Reilly in 2009 as a security guard at the Detroit Distribution Center ("DDC"). Approximately a year later Paul received a promotion to the City Counter Department, which is responsible for filling

_____

[1] At oral argument, plaintiff acknowledged that she was dismissing her FMLA claim against defendant O'Reilly, as well as all claims against William Losey personally and O'Reilly Automotive Stores, Inc.

1

special orders. Typically, the City Counter Department is staffed by between 6 and 8 employees at any given time. More specifically, Paul was both a City Counter Material Handler ("Picker") and City Counter Route Driver ("Driver"). A Picker is responsible for receiving orders via pick ticket, quickly and accurately picking parts from the location listed on the pick ticket, and then bringing the parts to a designated location within the warehouse. A Picker performs her job with the aid of lift equipment, carts, and scooters. Picking jobs are assigned on a first in, first out basis. A Driver is responsible for loading a delivery van, driving to a retail location, and then unloading the van.

According to the job descriptions outlined by O'Reilly, a Driver is required to lift objects weighing up to 10 pounds for 3-4 hours per day; lift objects weighing from 11 to 25 pounds for 3-4 hours per day; lift objects weighing from 26 to 40 pounds for 3-4 hours per day; and lift objects weighing from 41 to 60 pounds for 1-2 hours per day. (Job Description, Doc. 16 Ex. 1, Pg ID 101). A Picker is required to lift objects weighing up to 10 pounds for 7-8 hours per day; lift objects weighing from 11 to 25 pounds for 5-6 hours per day; lift objects weighing from 26 to 40 pounds for 3-4 hours per day; and lift objects weighing from 41 to 60 pounds for 3-4 hours per day. (*Id.*, Pg ID 104). Although some employees working within the warehouse were able to use heavy machinery, Paul was unable to use this equipment because she was not certified to do so. Nevertheless, Paul was able to use several types of carts for assistance moving products once they had been removed from the shelf.

The section of the warehouse where Paul worked is two stories. The second story contains parts of all weights and sizes, and is only accessible by stair. The Picker job description stipulates that climbing is required, though it does not explicitly state that

2

an employee is required to use the stairs.

In July of 2012, Paul sustained a hernia injury requiring surgical repair. She took leave under the Family and Medical Leave Act ("FMLA") because of the injury, but was under no medical restrictions upon her return to work. In late April of 2013, Paul sustained another hernia injury. She originally returned to work with no restrictions, but began to experience pain while working. On June 4, 2013, Paul was placed in a transitional assignment, also referred to as "light duty". Transitional assignments are "designed to help team members return to their regular full-time positions." (O'Reilly Policy 300.18, Doc. 16 Ex. 4, Pg ID 121). Per company policy, transitional assignments are strictly temporary and not intended to be permanent. Transitional assignments are available for 90 days, with a possible 90-day extension considered on a case-by-case basis. Paul's transitional assignment restricted her from both pushing and pulling over 20 lbs. and using the stairs. (FMLA form, Doc. 19 Ex. 4, Pg ID 291). If Paul received an order containing items that fell outside of her restrictions, she would first pick the items she was capable of lifting and then bring the unfulfilled order back to the office for a co-worker to finish. According to the affidavit of Scott Combs—Paul's direct supervisor during this period—Paul's restrictions caused animosity amongst her co-workers. Combs claimed that "Paul's inability to perform the essential functions of her job caused disruption amongst her co-workers and ill will as they had to work harder/quicker to make up for her lost time." (Combs Affidavit., Doc 16 Ex. 7, Pg ID 139).

On July 2, 2013, Paul's physician imposed the following restrictions: no lifting, pulling, or pushing more than 20 pounds, and limited stair use. (Doctor Note, Doc. 19 Ex. 3, Pg ID 284). To this day, Paul is only able to use the stairs "maybe once or twice"

3

before her injury begins to flare up. (Paul Dep., Doc. 19 Ex 1 at 33, Pg ID 252). On July

25, 2013, Paul submitted an application for Family & Medical Leave of Absence.  Paul

requested intermittent FMLA leave in October 2013. This was granted, yet no time was

ever used by Paul. On December 14, 2013 Paul requested a three month extension to

her transitional role. When Jodi Beck—O'Reilly's HR Leave Administration

Manager—asked about Paul's accommodation via E-mail, Paul's supervisor—Bill

Losey—claimed the following:

> "It is common practice at this [distribution center] to allow the weight restriction of
> no lifting >20 lbs. The supervisor has been assigning picks in locations that can
> accommodate the restriction. She also does cleaning and detailing within the
> department. The difficulty is with the stair climbing because that restricts the
> product that is within the weight limits. Our CC Material Handlers also drive and
> she currently can not [sic] because of the weight restrictions, so this would not be
> a restriction we would accommodate on a permeant [sic] basis."

(Doc. 19 Ex. 5, Pg ID 298). According to Distribution Director Michael Wright, everyone

working within the DDC during the period of Paul's injury was required to both "lift and

do stairs." (Wright Dep., Doc. 16 Ex. 3 at 85-86, Pg ID 119). On January 31, 2014,

Paul's transitional assignment expired. Paul was placed on a leave of absence because

she still could not work without restrictions. On March 27, 2014 Paul was placed on

administrative leave, and she was eventually terminated in June of 2014.

## II. Standard of Review

Federal Rule of Civil Procedure 56(c) empowers the court to render summary

judgment "forthwith if the pleadings, depositions, answers to interrogatories and

admissions on file, together with the affidavits, if any, show that there is no genuine

issue as to any material fact and that the moving party is entitled to judgment as a

matter of law." *See Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001).  The

4

Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding*, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968); *see also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a

5

mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248,

252. Rather, there must be evidence on which a jury could reasonably find for the

non-movant. *McLean*, 224 F.3d at 800, *citing Anderson*, 477 U.S. at 252).

### III. Analysis

The ADA stipulates that an employer engages in unlawful discrimination by "not

making reasonable accommodations to the known physical or mental limitations of an

otherwise qualified individual with a disability." 42 U.S.C.A. § 12112(b)(5)(A). O'Reilly

does not contest that Paul was an individual with a disability, nor does O'Reilly deny that

it discharged Paul because of her disability. When there is direct evidence that an

employer relied on an individual's disability in making an adverse employment decision,

the court engages in a burden-shifting analysis. *Monette v. Elec. Data Sys. Corp.*, 90

F.3d 1173, 1186 (6th Cir.1996), *abrogated on other grounds by Lewis v. Humboldt*

*Acquisition Corp.*, 681 F.3d 312, 315–16 (6th Cir. 2012)(en banc). Initially, the plaintiff

must present a prima facie case of unlawful employment discrimination by

demonstrating that she is "disabled and otherwise qualified for the position." *Keith v.*

*Cnty. of Oakland*, 703 F.3d 918, 923 (6th Cir. 2013). An otherwise qualified individual is

one who, "with or without reasonable accommodation, can perform the essential

functions of the employment position that such individual holds or desires." 42 U.S.C.A.

§ 12111. (emphasis added). Plaintiff, if seeking an accommodation, bears a traditional

burden of proof that the requested accommodation is a reasonable one. *Hoskins v.*

*Oakland Cnty. Sheriff's Dep't*, 227 F.3d 719, 728 (6th Cir. 2000), *citing Monette*, 90 F.3d

at 1186 n. 12. After plaintiff's burden has been met, "[t]he employer will bear the burden

of proving that a challenged job criterion is essential, and therefore a business

6

necessity, or that a proposed accommodation will impose an undue hardship upon the employer." *Monette*, 90 F.3d at 1186.

O'Reilly argues that (A) Paul's restrictions amounted to some of the essential functions of her position; (B) allowing Paul to work within her restrictions constitutes an unreasonable accommodation; and (C) permitting Paul to work within her restrictions will result in an undue hardship on the operation of O'Reilly's business.

## A.    Whether Paul's restrictions amounted to essential functions of her position

Paul contends that the ability to use the stairs and lift objects weighing more than twenty pounds are not essential functions of the Picker position. As a result, Paul argues that she is "otherwise qualified" for her position because she need not necessarily perform these functions. The court disagrees. The essential functions of a position are the fundamental job duties of that position and are not simply marginal functions.  29 C.F.R. § 1630.2(n)(1). Evidence of whether or not a particular function is essential includes:

> (i) The employer's judgment as to which functions are essential;
>
> (ii) Written job descriptions prepared before advertising or interviewing applicants for the job;
>
> (iii) The amount of time spent on the job performing the function;
>
> (iv) The consequences of not requiring the incumbent to perform the function;
>
> (v) The terms of a collective bargaining agreement;
>
> (vi) The work experience of past incumbents in the job; and/or
>
> (vii) The current work experience of incumbents in similar jobs.

29 C.F.R. § 1630.2(n)(3). Ultimately, any attempt to ascertain which functions of a

7

position are essential is "highly fact specific." *Hoskins*, 227 F.3d at 726. "Such a determination should be based upon more than statements in a job description and should reflect the actual functioning and circumstances of the particular enterprise involved." *Hall v. United States Postal Serv.*, 857 F.2d 1073, 1079 (6th Cir.1988). Nevertheless, "nothing prevents a court from resolving a summary judgment motion on the basis of such a fact-specific determination when the evidence before the court pertinent to essentiality does not conflict, insofar as the non-moving party has failed to create a genuine issue of material fact." *Brown v. Chase Brass & Copper Co.*, 14 F. App'x 482, 489 (6th Cir. 2001).

The evidence before the court, taken in its entirety, leads to the conclusion that using the stairs and lifting objects weighing more than 20 pounds are essential functions of Paul's position. According to the judgment of Paul's direct supervisor, both retrieving items from the second level of the warehouse and retrieving items weighing over twenty pounds were essential elements of the position. Written job descriptions clearly stipulate that the physical requirements of Paul's position include climbing, as well as both carrying and lifting objects in excess of twenty pounds. Furthermore, the job descriptions also indicate that these functions will likely be performed for hours. The consequences of not requiring Paul to perform these functions are adverse: Paul, when faced with orders that the she cannot fulfill, must interrupt her co-workers so they can complete the work assigned to her originally. Hypothetically, if it were the case that most of the individuals in Paul's position had the same restrictions, the efficient operation of the warehouse would surely be hindered. The current work experience of similar incumbents also corroborates this court's conclusion: as indicated above by Distribution

8

Director Michael Wright, all positions within the DDC—including clerical positions—required an employee to lift more than 20 pounds and use the stairs, and so these responsibilities were by no means idiosyncratic or marginal (Wright Dep., Doc. 16 Ex. 3 at 85-86, Pg ID 119). In sum, these factors lead the court to conclude that it cannot reasonably be said that using the stairs and lifting objects weighing over 20 pounds are not essential functions of a position that principally exists to "pull parts quickly and accurately … for shipment." (Job Description, Doc. 16, Ex. 1 at 4, Pg ID 102).

**B.    Whether allowing Paul to work within her restrictions constitutes a reasonable accommodation**

Paul also contends that she is entitled to relief because the ability to work within her restrictions constitutes a reasonable accommodation. The court disagrees. Reasonable accommodations are "Modifications or adjustments to the work environment … that enable an individual with a disability who is qualified to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(1)(ii). The ADA stipulates that a "reasonable accommodation" may include "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices ... and other similar accommodations." 42 U.S.C. § 12111(9). However, "job restructuring" within the meaning of the ADA "only pertains to the restructuring of non-essential duties or marginal functions of a job." *Bratten v. SSI Servs., Inc.*, 185 F.3d 625, 632 (6th Cir.1999). (emphasis added)." An accommodation that eliminates an essential function of the job is not reasonable." *Hall v. U.S. Postal*

9

*Serv.*, 857 F.2d 1073, 1078 (6th Cir. 1988). Moreover, the Sixth Circuit has acknowledged that "[c]ourts have continuously found that employers are not required to assign existing employees or hire new employees to perform [essential] functions or duties of a disabled employee's job which the employee cannot perform by virtue of his disability." *Bratten*,185 F.3d at 632 (holding that "allowing co-workers to perform as much as 20% of the essential automotive mechanic duties" for disabled employee was not a reasonable accommodation), *citing with approval Cochrum v. Old Ben Coal Co.*, 102 F.3d 908, 913 (7th Cir.1996) (having a helper perform "most if not all" of roof bolter tasks were "extraordinary," not reasonable accommodations); *Benson*, 62 F.3d at 1112–13 (re-allocating essential functions of a job to other employees is not a "reasonable accommodation" within the meaning of the ADA); *Gilbert v. Frank*, 949 F.2d 637, 644 (2d Cir.1991) (having co-workers perform essential lifting tasks of job is not "reasonable"); *Treadwell v. Alexander*, 707 F.2d 473, 478 (11th Cir.1983).

Because of her disability, Paul is unable to both lift objects weighing over 20 pounds and retrieve objects from the second level of the warehouse. Additionally, Paul cannot unload the delivery truck without assistance. Necessarily then, these functions must be assigned to Paul's fellow co-workers. Because this court has determined that these are essential functions, precedent dictates that shifting this burden to fellow employees constitutes an unreasonable accommodation as a matter of law.

In response, Paul argues that employees exchanging duties can be a reasonable form of accommodation, *citing Miller v. Illinois Dep't of Transp.*, 643 F.3d 190 (7th Cir. 2011). *Miller* is distinguishable from both a legal and a factual standpoint, and so any comparison lacks efficacy.  In *Miller*, the plaintiff worked as part of a bridge maintenance

10

crew. Id. at 192. Although plaintiff "was responsible for a variety of tasks, many of which could be performed from the ground," plaintiff suffered from acrophobia (a fear of heights) and was unable to perform certain functions that required working from a high elevation. Id. Importantly, the Seventh Circuit in *Miller* is in accord with the Sixth Circuit, holding that "task reassignments within a job can be unreasonable in situations where the reassigned task is an essential function of the job. In those situations, reassignment or delegation of the task would equate, essentially, to reassignment or delegation of the job itself." *Id.* at 199. Because the disputed functions in this case are essential to Paul's position, Paul's argument that these functions can be exchanged is unavailing. That was not the case in *Miller*, where the court conceded that "a reasonable jury could find that working at heights in an exposed or extreme position was not an essential function for *Miller* as an individual member of the bridge crew." *Id.* at 198.

Furthermore, the holding in *Miller* was predicated on evidence that "it was in fact the normal course for individual members of the bridge crew to substitute and reassign tasks among themselves according to individual abilities, preferences, and limitations. Miller's request for reasonable accommodation did not ask [defendant] to do anything it was not already doing." *Miller*, 643 F.3d at 199-200. Paul's arrangement while on light duty is not similar to the mutually beneficial arrangement in *Miller*. Although Paul benefitted from the ability to work within her restrictions, her fellow co-workers were made worse off: they became responsible for satisfying the more physically difficult tasks of Paul's position in order to compensate for her inability to do so. Nothing in the record indicates that employees at the DDC would exchange duties as a matter of course, or that employees would welcome such an opportunity.

11

Alternatively, Paul argues that accommodating her restrictions is reasonable because, as a team, the Pickers could lift and carry all parts that needed to be picked in a given day. This is a mischaracterization of the relevant legal inquiry. The ultimate question is not whether an accommodation makes it possible for the work to be completed, but whether an accommodation is reasonable. *See* 29 C.F.R. §1630.2(o)(1)(ii). As the court has outlined, the requested accommodation in this case is unreasonable, and so any potential repercussions lack relevance.

**C.     Whether permitting Paul to work within her restrictions will result in an undue hardship on the operation of O'Reilly's business.**

Because the court's ruling on the "essential function" and "unreasonable accommodation" prongs of O'Reilly's argument is ultimately dispositive in the present action, the court need not address the third prong of O'Reilly's argument relating to undue hardship.

## IV. Conclusion

For the reasons set forth above, O'Reilly's motion for summary judgment hereby is GRANTED as to Paul's discrimination claim under the ADA.

IT IS SO ORDERED.


Dated:  August 11, 2015

                                        S/George Caram Steeh_____
                                        GEORGE CARAM STEEH
                                        UNITED STATES DISTRICT JUDGE

12

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
August 11, 2015, by electronic and/or ordinary mail.

S/Marcia Beauchemin
Deputy Clerk